**EAST STROUDSBURG UNIVERSITY FOUNDATION, Petitioner**

v.

**OFFICE OF OPEN RECORDS, Respondent.**

**East Stroudsburg University of Pennsylvania, Petitioner**

v.

**Office of Open Records, Respondent.**

**Dow Jones Local Media Group, Inc. and Dan Berrett, Petitioners**

v.

**Office of Open Records, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 17, 2010.

Decided May 24, 2010.

Gayle C. Sproul, Philadelphia, for designated petitioners.

Corinna V. Wilson, Chief Counsel and Terry Mutchler, Harrisburg, for respondent, Office of Open Records.

Suzanne C. Hixenbaugh, Harrisburg, for respondent, Pennsylvania State System of Higher Education.

Timothy J. Nieman, Harrisburg, for amicus curiae, Clarion University Foundation, Inc.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

East Stroudsburg University Foundation (Foundation) has filed a petition for review from the final determination of the Office of Open Records (OOR) granting in part and denying in part the request made by Dan Berrett (Berrett) on behalf of his newspaper employer, *The Pocono Record* (*The Record*), pursuant to the Right–to–Know Law[1] regarding donor information and minutes of meetings held by the Foundation. East Stroudsburg University (University) has also filed an appeal and *The Record* has filed a cross-appeal from the final determination as well.[2] All of the

---

1. Act of February 14, 2008, PL. 6, 65 P.S. §§ 67.101–67.3104.

2. This matter was previously before the Court on an application to quash the appeal of the Foundation filed by Berrett and then Ottaway Newspapers, Inc., after the OOR issued its final determination and the Foundation filed a notice of intervention. (*Ottaway Newspapers, Inc. and Dan Berrett v. Office of Open Records* (Pa.Cmwlth., No. 1007 C.D.2009, filed July 20, 2009)). They alleged that the Foundation lacked standing because Section 1301(a) of the Right–to–Know Law, 65 P.S.

appeals involve the interpretation of Section 506(d)(1) of the Right–to–Know Law, 65 P.S. § 67.506(d)(1), which provides: "A public record[3] that is not in the possession of an agency[4] but is in the possession of a party with whom the agency has contracted to perform a 'governmental function' on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act."[5] The University and the Foundation also object to the OOR's participation as a party in this appeal.

The University is part of the State System of Higher Education and is part of the Commonwealth government. *See* Section 2002–A of the Public School Code of 1949, Act of March 10, P.L.1949, P.L. 30, added by the Act of November 12, 1982, P.L. 660, *as amended*, 24 P.S. § 20–2002–A. On February 4, 2009, Berrett sent a request submitted by *The Record* under the Right–to–Know Law to Richard Staneski (Stane-

ski), the University's Vice President for Finance and Administration, requesting the following information:

● A list of donors to the Science and Technology Center, including the amounts of their pledge, payments (and the dates made) and outstanding balance;

● The opportunity to inspect donor files (including records of transactions, funds transfer, classification, and external and internal correspondence via e-mail and memoranda related to these gifts) for Warren Hoeffner, Robert Dillman, HD Justi, Betty Baltz, Jone Bush and Doris Imbt; and

● Copies of minutes of the ESU Foundation's board of directors meetings between 2005–07.

The letter indicated that while the records were held by the Foundation, they reflected decisions and actions authorized and carried out by employees of the University who were public employees. "[T]he Foundation defines itself as a 'component

§ 67.1301(a), explicitly limited the right of appeal to requesters and agencies, and the Foundation was neither. They also argued that the Foundation was not a party because, while it participated below, that did not make it a party under Section 1101 of the Right–to–Know Law, 65 P.S. § 67.1101. The Foundation argued that it was a "party" because the final determination directly impacted its rights.

We acknowledged that the Right–to–Know Law did not expressly provide that a person with a "direct interest" may appeal a decision that adversely affected his or her "direct interest." Moreover, if a person with a direct interest was not a party to the matter, that would mean that a court could not fashion a remedy if the third party simply refused to turn over records as ordered by the OOR. However, due process safeguards in the Pennsylvania and United States Constitutions required that before any direct interest was affected, the party had to be given an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976);

*Pennsylvania Coal Mining Association v. Ins. Dept.*, 471 Pa. 437, 370 A.2d 685 (1977).

3. "Public record" is defined as: "A record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." Section 102 of the Right–to–Know Law, 65 P.S. § 67.102.

4. "Agency" is defined as: "A Commonwealth agency, a local agency, a judicial agency or a legislative agency." 65 P.S. § 67.102. There is no dispute that the University is an agency under this definition.

5. Section 2 of the now repealed Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. § 66.2, merely required that "every public record of an agency shall ... be open for examination and inspection."

unit of East Stroudsburg University,' as explained on page 7 of its 2007–08 audit, and 'its financial statements are included as such in the financial statements of the University.' Therefore, I believe this information is material to the actions and decisions of a public agency." (Original Record, February 4, 2009 letter from Dan Berrett to Richard Staneski.)

In response, Staneski, on behalf of the University, denied the request because, while the University was a commonwealth agency, the Foundation was a non-profit, non-stock Pennsylvania corporation, and the "Memorandum of Understanding" (MOU) between them defined their relationship as independent contractors, not joint ventures or principal and agent. Therefore, no legal relationship existed, and the Foundation was not "tasked with performing essential government functions, it is not considered a Commonwealth agency under the Right to Know Law and the documents you requested are not subject to disclosure under the Right to Know Law as public records." (Brief of East Stroudsburg, Exhibit B, letter dated February 10, 2009 from Richard Staneski to Dan Berrett.)

After receipt of this denial, *The Record* appealed to the OOR, arguing that the Foundation performed "government services" on behalf of the University. Because the facts were undisputed, no hearing was held before the OOR. *The Record* contended that the Foundation was performing a governmental function because:

• the MOU referred to its background statement describing the Foundation as "having been established to advance the charitable, educational and scientific purposes of ESU; raising, receiving and managing endowments for the benefit of the university; offering 'programs and services related to the academic mission of the university;' and operating 'for the benefit of, to perform the functions of and to carry out the purposes of the university.' "

• one of the chief duties of the Foundation was to manage and distribute scholarships to University students. That combined with the University's mission to provide students with education at the lowest possible costs required the Foundation's records to be made public under Section 506(d) of the Right–to–Know Law, 65 P.S. § 67.506(d).

• the Foundation functioned as a "state-affiliated entity" because it was staffed by public employees. It cited as examples that the Vice President for University Advancement held a dual position as Executive Director of the Foundation and the entire staff of the Foundation doubled as staff of the University's advancement department.

Based on all of the above, *The Record* argued that the requested records had to be provided to it because pursuant to Sections 301(a), 305(a) and 506(d)(1) of the Right–to–Know Law, 65 P.S. §§ 67.301(a),[6] 67.305(a) [7] and 67.506(d)(1), they were in the possession of the Foundation, a party with which the University, a commonwealth agency, had contracted to perform governmental functions on behalf of the University.

---

**6.** 65 P.S. § 67.301(a) provides: "A Commonwealth agency shall provide public records in accordance with this act."

**7.** 65 P.S. § 67.305(a) provides: "A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if: (1) the record is exempt under section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree."

The University argued that the Foundation was not performing a governmental function for the University stating:

- the MOU unequivocally established the relationship of the parties as that of independent contractors;
- the request sought documents that were neither in the control nor in the possession of the University;
- the Foundation was not an agency under the Right–to–Know Law but was a private, non-profit corporation which performed no essential government function;
- donor documents were exempt from disclosure under Section 708(b)(13) of the Right–to–Know Law, 65 P.S. § 67.708(b)(13), which excepts "[r]ecords that would disclose the identity of an individual who lawfully makes a donation to an agency unless the donation is intended for or restricted to providing remuneration or personal tangible benefit to a named public official or employee of the agency. This exception includes lists of potential donors compiled by an agency to pursue donations, donor profile information or personal identifying information relating to a donor."

In addition to the arguments raised by the University, the Foundation also argued that it was not required to disclose the requested documents just because it worked closely with a state university, which did not eliminate its status as an independent entity, and did not require it to disclose documents under the Right–to–Know Law. The Foundation also argued that even if it was determined to be an agency or a third-party contractor subject to disclosing records under Section 506(d)(1) of the Right–to–Know Law, the records requested were not public records as defined by that law.

■ The OOR issued a final determination denying in part and granting in part *The Record's* appeal. It determined that the minutes of the Foundation were not public records because the meetings were not public meetings, and the Foundation was not an agency required to conduct public meetings. However, because the Foundation was performing governmental functions for the University, it required the University to provide the amounts of pledges, payments and the dates made, outstanding balance, records of transactions, funds transfers, classification and external and internal correspondence via e-mail and memoranda related to donations subject to redaction of names.[8] All information related to specific donors was exempt if disclosure would reveal their identity. The University and Foundation have filed petitions for review from that final determination, and *The Record* has filed a cross-petition for review which has been consolidated for review before this Court. While *The Record* seeks attorneys' fees and costs of litigation, it has not appealed that portion of the OOR opinion redacting donor names.[9] [10]

---

8. *See* Section 706 of the Right–to–Know Law, 65 P.S. § 67.706, which provides:

> If an agency determines that a public record ... contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an

integral part of the public record ... and cannot be separated, *the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.* (Emphasis added.)

9. Although the Foundation and the University are not appealing the OOR's decision redact-

## I.

Both the Foundation and the University contend that the OOR erred in determining that fundraising of private donations by the Foundation for the University is a "governmental function" requiring the release of records under 65 P.S. § 67.506(d)(1). They argue that the functions performed by the Foundation are not governmental functions but rather proprietary business functions that the University is not required to perform by law.[11]

ing donor names, they contend that the OOR is violating Section 708(b)(13) of the Right-to-Know Law by releasing personal financial information to *The Record* because even if the donor's name is redacted, his or her pledge amount, payments and outstanding balance, etc. would reveal the donor's personal financial information. However, because this issue was not raised before the OOR, it is waived on appeal. Even if it was not waived, once the donor's name is redacted, no one would be able to discern the donor's name merely by the pledge amount.

10. Previously, our scope of review under the Right-to-Know Law was whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Buehl v. Department of Corrections*, 955 A.2d 488 (Pa.Cmwlth.2008). However, since the Right-to-Know Law was re-enacted, Section 1301(a), 65 P.S. § 67.1301(a), now provides the following:

> (a) **General Rule.** Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a Commonwealth agency, a legislative agency or a judicial agency issued under section 1101(b) or the date a request for access is deemed denied, a requester or the agency may file a petition for review or other document as required by rule of court with the Commonwealth Court. **The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole.** The decision shall clearly and concisely explain the rationale for the decision. (Emphasis added.)

Under that provision, we are now to make an independent review of the evidence and can substitute our factfinding for that of the agency. In this case, though, the facts are not in dispute.

11. They point out that the University is a constituent member of the Pennsylvania State System of Higher Education (PASSHE), whose purpose and general powers and its member institutions are defined, in pertinent part, as follows:

> (b) The system is hereby granted and shall have and may exercise all the powers necessary or convenient for the carrying out of the aforesaid purposes, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> \*     \*     \*
>
> (3) To acquire, purchase, hold, lease as lessee and use any property, real, personal or mixed, tangible or intangible, or any interest therein, lease as lessor any property, real, personal or mixed, tangible or intangible, necessary or desirable for carrying out the purposes of the system, and to sell, transfer and dispose of any property acquired by gift, grant, devise or bequest, whether the property is real, personal or mixed, tangible or intangible, or any interest therein; *to take, demand, receive and possess all moneys, real property and good which shall be appropriated, given or granted to for the use of the system and to apply the same according to the will of the donors;* to sell, transfer and dispose of real property acquired by and titled to the system upon approval by the General Assembly as provided in section 2019–A; and by gift, purchase or devise to receive, possess, enjoy and retain forever any and all real and personal estate and funds, of whatsoever kind, nature or quality the same may be, in special trust and confidence that the same, and the profits thereof, shall be applied to and for the use and purpose of endowing the system, *and shall have power to receive donations from any source whatever, to be exclusively devoted to the purposes of the system or according to the terms of donation:* Provided, however, that the system shall have no power at any time or in any manner, to pledge the credit or taxing power of the Commonwealth, nor shall any of its obligations or debts be deemed to be obli-

In making that argument, the Foundation and the University suggest that we use *Zager v. Chester Community Charter School*, 594 Pa. 166, 173, 934 A.2d 1227, 1231 (2007), as a guide in determining what is a "governmental function." In that case, the issue was whether a charter school was an agency within the meaning of the previous Right–to–Know Act (Act) that defined an agency as, among other things, an "organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function." *Former*

Section 2 of the Act, 65 P.S. § 66.2.[12] It found that an agency performed an "essential governmental function" where "the performing entity must be either statutorily identified as providing an essential service or provide a service which is constitutionally mandated or indisputably necessary to continued existence of the Commonwealth." *Zager*, 594 Pa. at 173, 934 A.2d at 1231. Notably, in setting forth what information is subject to access in 65 P.S. § 67.506(d)(1), the General Assembly only provides that a contracting party is required to release information when it is performing a "governmental function," not an "essential governmental function." [13]

gations of the Commonwealth, nor shall the Commonwealth be liable for the payment of principal or interest on such obligations. *Nothing herein shall empower the Board of Governors or the chancellor to take or receive any moneys, goods or other property, real or personal, which is given or granted to specific institutions.* (Emphasis added.)
Section 2003–B of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 20–2003(B)(3), added May 17, 2001, P.L. 4. The Foundation and the University, therefore, contend that under the PASSHE's general purposes, because the University is not required to solicit funds, it is not a governmental function.
*The Record* directs our attention to Section 2006–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 20–2006–A(a)(4), added November 12, 1982, which provides that the PASSHE Board of Governors "establish broad fiscal, personnel and educational policies under which the institutions of the system *shall* operate." (Emphasis added.) PASSHE members are expressly "directed to develop sources of independent support at levels sufficient to facilitate the enhancement of the university." *See* PASSHE Board of Governors Policy 1985–04–A. (Reproduced Record at 16a.) Therefore, *The Record* contends that the University is under an obligation to raise funds and other assets and to hold and manage them in support of its educational mission.

**12.** Section 102 of the Right–to–Know Law continues the distinction in its definition of

what is a "Commonwealth agency." It provides that any of the following are a "commonwealth agency": "(1) Any office, department, authority, board, multistate agency or commission of the executive branch, an independent agency and a State-affiliated entity. The term includes: (i) The Governor's Office. (ii) The Office of Attorney General, the Department of the Auditor General and the Treasury Department. (iii) An organization established by the Constitution of Pennsylvania, a statute or an executive order which performs or is intended to perform an *essential governmental function.*" (Emphasis added.) 65 P.S. § 67.102.

**13.** The Foundation and the University also rely on *Dynamic Student Services v. State System of Higher Education*, 548 Pa. 347, 697 A.2d 239 (1997), involving a request by Dynamic, a seller of used text books for, among other things, course materials at Millersville University (MU). It was in competition with a non-profit corporation that operated campus bookstores at MU and requested that MU provide it with information regarding registration and course materials. MU refused. On appeal to our Supreme Court, it held that although the Act stated that "every public record of an agency shall be open for examination and inspection," the requested records were not part of MU's records as it had no part in the ordering or selling of books. If the Act was still the law, *Dynamic Student Services* would certainly augur in favor of the Foundation and the University's position. However, under the old Act, there was no

■ *Zager*, though, illustrates that the distinction under any version of the Right–to–Know Law has never been the "proprietary-governmental" distinction because the word "proprietary" is never mentioned in either act; rather, the distinction has always been between "governmental function" and "essential governmental function."[14] Because the General Assembly only used the term "governmental function" in 65 P.S. § 67.506(d)(1), the language is plain that all contracts that governmental entities enter into with private contractors necessarily carry out a "governmental function"—because the government always acts as the government.

■ The General Assembly also used the term "governmental function" to limit access to only those records in a contractor's possession that relate to that function, not other records that a contractor maintains during the normal scope of business. Access is further restricted to records that "directly" relate to carrying out the governmental function, to avoid access that may relate to the contract but do not relate to its performance. For example, material used in preparation for the bid for the governmental contract would not be subject to access because those records do not directly relate to carrying out the governmental function.

provision similar to 65 P.S. § 67.506(d)(1) requiring a party who performed a governmental function under contract with an agency to provide the records to a requester, and because *Dynamic Student Services* was decided under the previous Act before the new language was added, it is inapplicable.

**14.** The governmental/proprietary distinction was taken largely from the now rejected method by which local governments were either immune or liable for tortuous conduct. The activity, even if proprietary for immunity purposes, was always considered governmental and subject to all the governmental requirements—contracts would still have to be bid; improper activity was still subject to surcharge, etc. Moreover, no matter the formulation of the test to determine what was proprietary and what was governmental, it was always considered problematic. Even rejecting the distinction, our Supreme Court in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 598, 305 A.2d 877, 884 (1973), stated that:

This Court recognized the general dissatisfaction with this distinction when we stated, 'Perhaps there is no issue known to the law which is surrounded by more confusion than the question whether a given municipal operation is governmental or proprietary in nature.' *Morris v. Mount Lebanon Township School District*, supra 393 Pa. at 637, 144 A.2d at 739. *Compare Shields v. Pittsburgh*, supra (operation of playground during vacation is

a governmental function) with *Morris v. Mount Lebanon Township School District*, supra, decided four years earlier, (operation of summer recreation program is a proprietary function).

Recently, the Indiana Supreme Court [*Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972)] echoed the widespread displeasure with the governmental-proprietary distinction:

'Exactly what constitutes a proprietary function as opposed to a governmental function has never been clearly enunciated by the courts, and this failure to establish a criteria has led to the generally confused state of the bench and bar in the application of the doctrine of sovereign immunity. Deciding on useful guidelines between rather obscure, whimsical notions enunciated by the appellate courts throughout the country has caused enormous conflicts in the courts in the past decade.'

*Campbell v. State*, supra, 284 N.E.2d at 735.

Moreover, given that municipal authority functions are considered proprietary, if we were to use that standard, records from a contractor with a municipal authority (and to a large degree, with municipalities) would never be considered public records within 65 P.S. § 67.506(d)(1) because the contract could not be considered as performing a governmental function. *Southeastern Pennsylvania Transp. Auth. v. Union Switch & Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, 664–65 (1994).

Confirming this analysis is the decision of the Iowa Supreme Court in *Gannon v. Board of Regents*, 692 N.W.2d 31 (Iowa 2005). In that case, Gannon was an Iowa taxpayer who wanted to open up the Iowa State University (ISU) Foundation's records for the public to view. The ISU Foundation was staffed with ISU employees and was located on the ISU campus. In determining whether Gannon was allowed access to the ISU Foundation's records, the Iowa Supreme Court relied on Iowa Code § 22.2(2) which provided: "A government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions." The Iowa Supreme Court found that the ISU Foundation was performing a government task pursuant to its contract with the ISU and "[a] government body may not outsource one or more of its functions to a private corporation and thereby secret its doings from the public." *Gannon*, 692 N.W.2d at 39.[15]

65 P.S. § 67.506(d)(1) requires access to contractor records directly related to a governmental function while the Iowa law provides that a government body shall not prevent the examination or copying of a public record that would otherwise be public by contracting with a non-government body to perform any of its duties or functions. Both approaches, however, serve the same function—providing access to records from contractors that relate to carrying out normal government business.

■ In this case, there is no dispute that the Foundation, under the MOU, carries out fundraising on behalf of the University, making any records "directly" related to performing fundraising activities on behalf of the University. Because the OOR properly determined that access should be permitted to records of fundraising activities of the Foundation, the OOR properly ordered that *The Record* could review and copy the list of donors, albeit with redacted names, including financial information.

15. The Iowa Supreme Court explained:

> Successful fundraising and management is a very important, if not vital, function of the modern university and an integral part of its continuing viability. The Foundation's activities support a myriad of university programs, scholarships, facilities, and projects. "The receipt and solicitation of gifts ... is an indispensable function of any institution of higher learning." *Toledo*, 602 N.E.2d at 1162. [*State ex rel. Toledo Blade Co. v. University of Toledo Foundation*, 65 Ohio St.3d 258, 602 N.E.2d 1159 (1992).] "[T]he solicitation and receipt of donations for the university, and keeping records of that activity, are government functions." *Id.* at 1163.
>
> [I]f ISU stopped its fundraising efforts or quit participating in the Foundation's efforts, ISU students and the legislature would certainly be surprised to learn that such activity was not a government function. The uncontroverted evidence shows that today's Foundation continues the es-

> sential purpose of its predecessor foundations and by virtue of this fact enjoys the continued support of ISU. ISU now permits—if not actively directs—money that would naturally flow to the government to migrate to the Foundation. Before the Foundation existed, people wanting to donate to ISU presumably did so directly; now they must choose between ISU and the Foundation, with ISU at the very least allowing that such interests be directed to the Foundation. In executing the service agreement, ISU, a government body, with the express approval of another government body, the Board of Regents, has "contracted away" one of its functions—the ability to raise money and manage its finances—to what we assume in this case is a nongovernment body. In so doing, the Board and ISU have "accomplish[ed] indirectly what they are prevented from doing directly," i.e., they have "avoid[ed] disclosure of what would otherwise be a public record."
>
> *Gannon*, 692 N.W.2d at 41–42.

## II.

### Minutes

In its cross-appeal, *The Record* argues that it should have been granted its request to review and copy the Foundation's Board of Directors' meeting minutes because they are public records and directly relate to endowment activities which constitute a governmental function. Specifically, it argues that the OOR erred by finding that no portion of any of the Foundation's minutes directly related to its endowment activities, stating that this is simply incredible because the Foundation was established to raise and manage endowments on the University's behalf. Given that the Foundation's sole purpose is to manage the endowment of the University and that the affairs of the Foundation are officially managed by the Board of Directors, the minutes of its meetings must include the decisions that the Board is making with regard to the performance of activities that lie at the heart of the work of the Foundation.

■ While the OOR properly found that the Foundation may be performing governmental functions on behalf of the University, which is an agency under the Right–to–Know Law, the Foundation is not an agency by definition under the Right–to–Know Law. It is a non-profit corporation, and its Board of Directors' meeting minutes are not subject to disclosure. Nonetheless, because we have determined that the raising and disbursing of funds is a governmental function that the Foundation is performing on behalf of the University, any portion of the meeting minutes relating to the management of those funds are a public record. Consequently, the

OOR erred by refusing to allow *The Record* access to those records.

## III.

### Attorneys' Fees and Costs

As to *The Record's* request for attorneys' fees and costs, Section 1304 of the Right–to–Know Law, 65 P.S. § 67.1304(a), provides the following:

(a) **Reversal of agency determination.**—If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of the law.

■ Because there is no evidence that the University acted willfully, with wanton disregard or in bad faith in refusing to provide the requested documentation to *The Record,* or the reasons provided by the University were not based on a reasonable interpretation of the newly amended Right–to–Know Law,[16] *The Record's* request for attorneys' fees and costs is denied.

## IV.

■ Finally, the Foundation and the University argue that the OOR is an adju-

---

**16.** Given the newness of this amended law, we cannot say that the University's interpreta-

tion of the MOU was unreasonable.

dicator and lacks standing to participate in this appeal as a party. Normally, when an agency performs only an adjudicatory function, the agency lacks standing to participate in the appeal because an independent adjudicator's only function is to decide and it has no interest in the underlying matter. In other words, it is not aggrieved. *See, e.g., Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 170 A. 867 (1934); *Zoning Hearing Board of Derry Township v. Dove,* 69 Pa. Cmwlth. 486, 451 A.2d 812 (1982) (zoning hearing boards also lack standing and are not proper party appellants because they are not injuriously affected). *See also Philadelphia Board of Pensions and Retirement v. Pearlman,* 137 Pa.Cmwlth. 146, 586 A.2d 466, 468 (1991) ("[The Philadelphia Pension Board] does not have authority or standing to participate as a party in appeals from matters it originally adjudicated"); *Department of Public Welfare v. Shapiro,* 80 Pa.Cmwlth. 182, 471 A.2d 160 (1984). The OOR does not have standing to defend its decision because it is not aggrieved by the release of another's agency records.

The only exception is if the statute confers party standing on the agency. Nothing in Section 1310 of the Right–to–Know Law, 65 P.S. § 67.1310, which sets forth the duties of the OOR, gives it party standing to defend its decisions and participate as a party in an appeal of one of its decisions. The only provision that possibly gives the OOR party standing is Section 1303(a) of the Right–to–Know Law, 65 P.S. § 67.1303(a). Under that provision, after an appeal is taken either by the requester or the agency pursuant to Section 1301(a) of the Right–to–Know Law, 65 P.S. § 67.1301(a), Section 1303 of the Right–to–Know Law entitled "Notice and Records," provides that:

> (a) Notice.—An agency, the requester and *the Office of Open Records* or designated appeals officer shall be served notice of actions commenced in accordance with *Section 1301* or 1302 and *shall have an opportunity to respond in accordance with applicable court rules.* (Emphasis added.)
>
> (b) Record on appeal.—The record before a court shall consist of the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer.

While this provision requires notice to be given either to "the Office of Open Records or a designated appeals officer," notice of the order is only given for the purpose of transmitting the record to the reviewing court. Because the statute has not conferred on the OOR standing to participate in this proceeding and it is otherwise not aggrieved, the Foundation and University's request to quash the OOR's brief is granted.

Accordingly, the order of the OOR is reversed to the extent it does not allow *The Pocono Record* access to pertinent Foundation Board of Directors' meeting minutes. In all other respects, the order of the OOR is affirmed.

Judge LEAVITT concurs in the result only.

Judge BROBSON did not participate in the decision in this case.

### ORDER

AND NOW, this *24th* day of *May,* 2010, the order of the Office of Open Records, dated April 10, 2009, is reversed to the extent it does not allow *The Pocono Record* access to pertinent Foundation Board of Directors' meeting minutes. In all other respects, the order of the Office of Open Records is affirmed. The Foundation and

University's request to quash the Office of Open Record's brief is granted.

## CONCURRING OPINION BY
President Judge LEADBETTER.

I join in parts III (regarding fees and costs) and IV (regarding OOR's standing to participate in appeals from its decisions) of the well-written majority opinion. Furthermore, I concur in the result reached as to the remaining issues. My disagreement with the majority lies in its statement that, "all contracts that governmental entities enter into with private contractors necessarily carry out a "governmental function"—because the government always acts as the government." [1]

Respectfully, I suggest that this interpretation is far too broad, for it renders the term "governmental function" meaningless. If all government contracts with third parties necessarily relate to performance of a governmental function, the General Assembly need only have said disclosure was required for all public records "in the possession of a party with whom the agency has contracted." Instead, the statute reads, "in the possession of a party with whom the agency has contracted *to perform a governmental function....*" 65 P.S. § 67.506(d)(1) [2] (emphasis added). I believe these words were intended to have meaning, and we must determine what that meaning is, not sweep it away entirely. Surely, government agencies enter into some, if not many, contracts that do not implicate a governmental function. If a prison contracts with a private company to provide food service in one of its institutions, that would appear likely to encompass a governmental function, because prisoners must be fed. On the other hand, if General Services contracts with that company to operate a cafeteria in the Capitol for the convenience of the general public and state employees, is that a government function? [3] I doubt it, but that sort of nuance is not presented here, and I do not believe we need to become embroiled in all the possible variations of government contracts in order to decide this case. [4]

1. The majority also, without discussion, accepts the view of the OOR that Section 506(d)(1), 65 P.S. § 67.506(d)(1), requires production of documents *created by third party contractors* containing information about *those contractors' activities* in performance of the "governmental function," where such a contract is found to exist. This may be an accurate interpretation of the actual statutory language, to wit: "[a] record of a Commonwealth or local agency] that is not in the possession of an agency, but is in the possession of a party with whom the agency has contracted ..." *Id.*, although Section 102, 65 P.S. § 67.102, defines a "record" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity *of an agency....*" (Emphasis added). While we may so hold, in a case in which it is at issue before us, interpretation of this language bears thoughtful consideration and should not be summarily assumed.

2. Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

3. Both this hypothetical example and the present case, in which the government agency is a university, manifest that whether or not a particular function is governmental will vary depending on the nature of the contracting agency.

4. We are here faced with a new statute which embodies not only new rules, but an entirely new conceptual and procedural framework. Many of these new concepts are provided in statutory language susceptible of multiple interpretations. Compounding the problem, the new Office of Open Records (OOR) is being overwhelmed by a deluge of requests which must be decided now. Under these circumstances, there is an understandable temptation to rush to fill in the details left blank in the new law and provide immediate interpretive guidance in the form of sweeping black letter rules. Nonetheless, I believe it is necessary to take our time and address these questions with a narrow focus on the facts presented in each case and avoid broad pro-

As noted by the majority, before the OOR the *Pocono Record* claimed that the Foundation itself qualified as an agency or that it was the alter ego of the University.[5] That argument has substantial merit. Indeed, the Foundation is staffed by University employees, and its Executive Director holds a dual position as Vice President for University Advancement. *See* Reproduced Record (R.R.) at 58a. It operates out of offices in University buildings, and the University provides clerical assistance, bookkeeping services, telephone and computer services. R.R. at 58a–59a. The Foundation was established "to perform the functions of and carry out the purposes of the University," and to "advance the charitable, educational and scientific purposes of the [University]." R.R. at 57a–58a. It manages the University's endowment and distributes scholarships to University students. R.R. 57a. Finally, the Notes to the Foundation's financial statements state that, "[t]he Foundation is a component unit of East Stroudsburg University, and its financial statements are included as such in the financial statements of the University." R.R. at 26a.

Nonetheless, the elements of the established alter-ego doctrine, which has its basis in corporate law, are generally described in terms that do not relate easily to government entities,[6] although we have put this round peg into the square hole in other circumstances. *See, e.g., 500 James*

*Hance Court v. Prevailing Wage Appeals Bd.*, 983 A.2d 792 (Pa.Cmwlth.2009); *Mosaica Educ., Inc. v. Prevailing Wage Appeals Bd.*, 925 A.2d 176 (Pa.Cmwlth.2007); *Lycoming County*. Moreover, the alter-ego doctrine carries a strong presumption against piercing the corporate veil, *Lycoming County*, 627 A.2d at 243, which would be inconsistent with the underlying presumption of open access in the new Right–to–Know Law (Law). 65 P.S. § 67.701. Thus, rather than revisit that doctrine here, I would simply hold that any time a non-profit corporation, or other form of private entity, is created and supported by a government agency and that entity's sole function is performing services for the benefit of the agency, and which the agency would otherwise perform, it is an instrumentality which should itself be treated as a public agency for purposes of disclosure requirements of the Law. Accordingly, I agree with the result reached by the majority, both as to the donor information as well as the minutes.[7]

Judge LEAVITT joins in this concurring opinion.

CONCURRING OPINION BY Judge McCULLOUGH.

I concur in the result reached in part I (the Foundation carries out the governmental function of fundraising on the University's behalf) and part II (the portion of

---

nouncements which may prove unworkable or unwise in different circumstances.

**5.** This argument was abandoned on appeal to this court in favor of the "governmental function" argument.

**6.** "Factors which may justify piercing the corporate veil [under an alter-ego theory] include undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetrate a fraud." *Lycoming County Nursing Home Ass'n., Inc. v.*

*Prevailing Wage Appeal Bd.*, 156 Pa.Cmwlth. 280, 627 A.2d 238, 243 (1993).

**7.** Had an alter ego or similar theory been argued in this appeal I would have voted to reverse entirely as to the Minutes and order their complete disclosure as well, subject to redaction of any privileged or exempt information they contained. However, since no such argument was presented on appeal, I would limit disclosure of the Minutes in accordance with the majority decision.

minutes relating to the management of those funds are public records) of the majority opinion. I also join in parts III and IV of the majority's opinion (relating to attorney fees and costs and standing).

However, I strongly object to the majority's interpretation of section 506(d)(1) of the Right to Know Law, which states that:

A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1). The majority concludes that "the language is plain" that all contracts entered into by a governmental entity carry out a governmental function. (Majority op. at 12–13.) Contrary to the majority's conclusion, I believe that this broad interpretation in fact ignores the plain language of the statute and instead renders the words "to perform a governmental function" mere surplusage.

I write separately because I am unable to join the concurring opinion's analysis of the alter-ego doctrine. The fact that this issue is not before us is, I believe, significant. In my view, the suggestion that we hold an entity to be "an instrumentality" under these circumstances is unnecessary. Instead, applying the statutory terms to the facts presented, I would hold that where, as here, a private entity has contracted to perform a service for a government agency, and such service is determined to be a governmental function of the agency, records related to such service are considered public records pursuant to section 506(d)(1) of the Right to Know Law.