# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Department of Education, | : | |
| Petitioner | : | |
| | : | Nos. 1083 & 1092 C.D. 2023 |
| v. | : | |
| | : | |
| Wyatt Massey and Spotlight PA | : | |
| (Office of Open Records), | : | |
| Respondents | : | |
| | | |
| Pennsylvania State University, | : | |
| Petitioner | : | |
| | : | No. 1207 C.D. 2023 |
| v. | : | |
| | : | Argued: September 9, 2025 |
| Pennsylvania Department of | : | |
| Agriculture, Wyatt Massey, and | : | |
| Spotlight PA | : | |
| (Office of Open Records), | : | |
| Respondents | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge


**OPINION BY**
**JUDGE DUMAS**                                                    **FILED:  October 20, 2025**


In these consolidated appeals, Petitioners Department of Education and Pennsylvania State University (individually, DOE and Penn State) petition for review of two Final Determinations issued by the Pennsylvania Office of Open Records (OOR).  Through those Final Determinations, OOR partially granted

Respondent Wyatt Massey's (Massey) Right-to-Know Law (RTKL)[1] requests he had filed with the DOE and the Pennsylvania Department of Agriculture (DOA), through which Massey sought copies of certain electronic documents that had been created by Penn State. Those documents could be accessed by the Secretaries of the DOA and DOE (collectively, Departments) via Diligent, an electronic database maintained by Penn State, due to the Secretaries' status as *ex officio* members of Penn State's Board of Trustees. After thorough review, we affirm.

## I. BACKGROUND[2]

On May 18, 2023, Massey, a reporter with Spotlight PA, submitted an RTKL request to the DOE, through which he sought the following items:

> 1. An electronic screenshot of all folders and files hosted on Diligent, the filesharing service Penn State uses, related to Eric Hagarty's role on the Penn State Board of Trustees, including but not limited to his role as a member of the Academic Affairs, Research and Student Life committee, Outreach, Development and Community Relations Committee, and the full board of trustees.
>
> 2. An electronic screenshot of all folders and files hosted on Diligent, the filesharing service Penn State uses, related to Khalid Mumin's role on the Penn State Board of Trustees, including but not limited to his role as a member of the Academic Affairs, Research and Student Life committee, Outreach, Development and Community Relations Committee, and the full board of trustees.
>
> 3. An electronic copy of all materials hosted on Diligent related to the August 2022 Penn State Board of Trustees retreat.
>
> 4. An electronic copy of all materials hosted on Diligent in relation to the November 16, 2022 meeting of Penn

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] We draw the substance of this section from the OOR's two decisions that disposed of Massey's RTKL request appeals. *See generally* OOR Final Determination, 9/1/23; OOR Final Determination, 10/6/23.

State's Academic Affairs, Research and Student Life committee, of which Mr. Hagarty was a member.

OOR Final Determination, 9/1/23, at 1-2.[3]  The DOE denied Massey's request on June 26, 2023, on the basis that these documents were not in its possession, custody, or control.

On June 29, 2023, Massey submitted an RTKL request to the DOA, through which he requested the following items:

1. An electronic screenshot of all folders and files hosted on Diligent, the file-sharing service Penn State uses, related to Russell Redding's role on the Penn State Board of Trustees, including but not limited to his role as a member of the Governance and Planning Committee, Legal and Compliance Committee, and the full board of trustees.

2. An electronic copy of all materials hosted on Diligent related to the August 2022 Penn State Board of Trustees retreat.

OOR Final Determination, 10/6/23, at 1-2.[4]  The DOA denied Massey's request on July 5, 2023, on the basis that these documents were not in its possession, custody, or control.

Massey then appealed these denials to the OOR on, respectively, July 6, 2023, and July 5, 2023.  The OOR subsequently granted Penn State's requests to participate in both appeals.  Thereafter, the OOR issued two Final Determinations that disposed of these appeals, on September 1, 2023, and October 6, 2023.  In the September 1, 2023 Final Determination, the OOR denied Massey's appeal as to Items 1 and 2 (on the basis that the DOE neither possessed nor was required to create the sought-after screenshots), but granted the appeal as to Items 3 and 4 (on the basis

---

[3] Hagarty was the Acting DOE Secretary between April 2022 and January 2023, while Mumin was the Acting DOE Secretary from January 2023 through June 2023, when he was confirmed by the Senate of Pennsylvania and formally assumed the role of DOE Secretary.

[4] Redding was the DOA's Secretary during the time periods covered by this request.

3

that responsive records had been received, and were accessible, by the DOE through Diligent).  In the October 6, 2023 Final Determination, the OOR denied the appeal as to Item 1 and granted the appeal as to Item 2.  Additionally, the OOR dismissed Massey's appeal as moot in part; the OOR noted that the DOA had already provided Massey with a 65-page, partially redacted document from a 2022 Penn State trustee retreat (Retreat Document) that was in the DOA's physical possession and dismissed Massey's appeal as moot to the extent that disclosure satisfied Massey's RTKL request, but also ordered the DOA to give an unredacted version to Massey.  The OOR applied the same logic to Massey's DOA appeal that it had used in Massey's DOE appeal, *i.e.*, that the DOA did not possess and was not required to create the requested screenshots, but had possession of and access to responsive documents.

These Final Determinations produced three separate appeals to our Court.  Specifically, the DOE appealed the September 1, 2023 Final Determination, while Penn State appealed both Final Determinations.  We subsequently consolidated all three appeals.  The parties have fully briefed their positions, and we have held oral argument thereon.  Accordingly, these consolidated appeals are ready for our disposition.

## II. DISCUSSION[5]

We address Penn State's and DOE's respective arguments in turn.

---

[5] With regard to RTKL requests submitted to Commonwealth agencies, the RTKL mandates that our Court constitutes the ultimate finder of fact and that we must consequently conduct a *de novo*, plenary review of OOR final determinations regarding such requests. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

4

<u>A. Penn State</u>

Penn State challenges both of the OOR's Final Determinations on the following bases. First, Penn State asserts that the documents requested by Massey do not constitute public records for purposes of the RTKL for four reasons: they were not created, received, or retained by the Departments; their disclosure would contravene the statutory limits placed upon Penn State's RTKL obligations; they are not in the possession, custody, or control of the Departments; and they are exempt from disclosure pursuant to Section 708(b) of the RTKL.[6] Penn State's Br. at 14-29. Second, Penn State argues that the Retreat Document is partially exempt from disclosure under the RTKL, because it contains Penn State's confidential proprietary information and predecisional deliberation information. *Id.* at 29-39.

We begin with a brief review of how the RTKL shapes an agency's obligation to disclose responsive materials.[7] Generally speaking, "the RTKL . . . is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pa. State Police v. McGill*, 83 A.3d 476, 479 (Pa. Cmwlth. 2014). Accordingly, items are presumed to be disclosable in response to an RTKL request as long as they qualify as a public record. *Id.*[8] "Record" is expressly defined in relevant part through the RTKL as, "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received[,] or retained pursuant to law or in connection

---

[6] 65 P.S. § 67.708(b).

[7] Per Section 301(a), "[a] Commonwealth agency shall provide public records in accordance with [the RTKL]." 65 P.S. § 67.301(a). "The burden of proving that a requested piece of information is a 'public record' lies with the requester." *Off. of Governor v. Bari*, 20 A.3d 634, 640 (Pa. Cmwlth. 2011).

[8] As we have explained in the past, "[w]hether sought after information constitutes a 'public record' is a preliminary, threshold issue[.]" *Bari*, 20 A.3d at 640.

with a transaction, business or activity of the agency." 65 P.S. § 67.102.[9] A Commonwealth agency's record is considered a "public record" under the RTKL as long as it "(1) is not exempt [from being disclosed] under [S]ection 708 [of the RTKL]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; [and] (3) is not protected by a privilege." *Id.*; *see Pa. Dep't of Educ. v. Bagwell,* 114 A.3d 1113, 1122 (Pa. Cmwlth. 2015) ("Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they [fall within any of those three exemption categories].").

The RTKL also mandates that "[u]pon receipt of a written request for access to a record, an agency shall make a good faith effort to determine . . . whether the agency has possession, custody[,] or control of the identified record[.]" 65 P.S. § 67.901. Thus, an agency need not *actually* possess a record in order for the RTKL's obligations to attach; rather, constructive possession is enough to trigger an agency's disclosure obligation. *UnitedHealthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 958 (Pa. Cmwlth. 2017). This is because "[t]he true inquiry is whether the [requested] document is subject to the control of the agency." *Barkeyville Borough v. Stearns*, 35 A.3d 91, 96 (Pa. Cmwlth. 2012) (citing *Tribune-Review Publ'g Co. v. Westmoreland Cnty. Housing Auth.*, 833 A.2d 112, 118 (Pa. 2003)). In other words, the "character of the record, not location, determines access" for purposes of the RTKL. *Id.* (citing *Mollick v. Twp. of Worcester*, 32 A.3d 859 (Pa. Cmwlth. 2011)); *accord Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1037 (Pa. Cmwlth. 2011) (emphasis in original) ("The location of a 'public record' is not at all a relevant consideration in terms of the public's right to *access*.").

---

[9] "[A record for purposes of the RTKL] includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." 65 P.S. § 67.102.

Turning to Penn State's main argument, we disagree with its assertion that the materials requested by Massey do not qualify as public records. With regard to the issue of creation, reception, and retention, Massey does not dispute that those materials were neither created nor retained by the Departments. *See* Massey's Br. at 14-21. We therefore need only determine whether the materials were received by those Departments.

The RTKL does not expressly define "received," so we must construe that term in accordance with its "common and approved usage." *P.R. v. Pa. Dep't of Pub. Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000) (cleaned up). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by the legislature." *Mountz v. Columbia Borough*, 260 A.3d 1046, 1050 n.4 (Pa. Cmwlth. 2021) (quoting *Leventakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 484 n.4 (Pa. Cmwlth. 2013)). Black's Law Dictionary defines "receive," in two relevant ways: first, "[t]o take (something offered, given, sent, etc.); to come into possession of or get from some outside source" and, second, "[t]o gain knowledge of from some communication; to perceive mentally; to understand[.]"[10] Similarly, Merriam-Webster defines this term in two relevant ways: first, "to come into possession of" and, second, "to assimilate through the mind or senses[.]"[11]

We conclude then that, in general, the information requested by Massey was "received" by the Departments. As noted above, the Departments' Secretaries accessed the requested materials through Diligent; though they did not consequently take *physical* possession, it remains that those materials were sent to them by an

---

[10] *Receive*, Black's Law Dictionary (12th ed. 2024).
[11] *Receive*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/receive (last updated Oct. 11, 2025).

7

outside source, as well as that this access allowed them to then perceive and assimilate the information contained therein. The Secretaries therefore received the requested materials, akin to how a person can be commonly understood to have received an email, despite the fact that it may only exist as data housed on a third-party server or cloud-based system that the person cannot physically access. *See Mollick*, 32 A.3d at 873-76 (emails can constitute public records even if they are only stored in government officials' personal email accounts). It follows that the information was also received by both Agencies; this is because the Secretaries received the requested information by virtue of their respective roles as *ex officio* members of Penn State's Board of Trustees, as well as because they only have those roles because they represent "the Commonwealth's education interests" and their Departments. *Bagwell v. Pa. Dep't of Educ.*, 76 A.3d 81, 90-91 (Pa. Cmwlth. 2013).

We are similarly unpersuaded by Penn State's assertion that fulfilling Massey's request will contravene the RTKL's limits on Penn State's disclosure obligations. It is true that Penn State is a state-related institution, not a Commonwealth agency, and therefore has limited *direct* disclosure obligations under the RTKL. *See* 65 P.S. §§ 67.102, 67.1501-67.1505; *cf. Roy v. Pa. State Univ.*, 568 A.2d 751, 752-54 (Pa. Cmwlth. 1990) (Penn State was considered a state-related institution under the RTKL's predecessor, the Right-to-Know Act, rather than a state agency). However, that fact is not dispositive in this situation, as the RTKL does not contain any provisions that expressly prevent *Commonwealth agencies* from providing information to requesters that originated with or was created by a state-related institution. *See Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (cleaned up) (though a court must "listen attentively to what a statute says[,] [we] must also listen attentively to what it does not say"). Indeed, as

8

we have explained in the past, the fact that Penn State and its Board are not Commonwealth agencies is immaterial, "because both parties to correspondence do not have to be agencies. Rather, only one party needs to be an agency to lead to RTKL disclosure." *Bagwell*, 76 A.3d at 88. Thus, as long as such information pertains to a Commonwealth agency's involvement with or interest in a state-related institution, the agency is not barred from disclosing it in response to an RTKL request. *See id.* at 87-91.

Moving on, we conclude that Penn State's assertion that the requested materials are not in the Departments' possession, custody, or control is without merit. It is undisputed that Penn State has granted the Departments' Secretaries the ability to access to the requested documents through Diligent, as well as that this access is largely unfettered in either scope or duration, outside of being read-only.[12] *See, e.g.*, Massey's Br. at 26-36; Penn State's Br. at 12, 17, 19, 22-27; Penn State's Reply Br. at 1, 11, 18-25. Therefore, the Departments have constructive possession of the requested materials, despite their read-only nature; this is by virtue of the fact that those materials have been specifically made available to the Secretaries in accordance with their positions as *ex officio* board members. *Cf. Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 799 (Pa. Cmwlth. 2023), *aff'd*, --- A.3d ---, 2025 WL 2400297 (Pa. 2025) (an agency's social media posts pertaining to official business are presumptively deemed public records under the RTKL); *Barkeyville Borough*, 35 A.3d at 95-97 (emails sent and received by government officials regarding their official duties are constructively possessed by their agencies, and presumptively constitute public records, even if those emails are actually possessed only by the

---

[12] This is not to suggest that the scope or duration of such access is dispositive regarding whether an agency possesses an item; rather, we simply note the nature of the access rights that Penn State has afforded to the Secretaries.

9

officials themselves or by a third party); *In re Silberstein*, 11 A.3d 629, 634 n.12 (Pa. Cmwlth. 2011) (it is not reasonable to construe the RTKL "to mean that the only time that an agency is required to provide a record that is not in its physical possession is when the agency contracts for a governmental function[, which is expressly required under Section 506(d)(1) of the RTKL]"). Holding otherwise would perversely incentivize Commonwealth agencies, local agencies, and affected third parties like Penn State to utilize remote servers and/or cloud-based services, in order to ensure that they would no longer need to disclose what would otherwise constitute public records. Such an outcome would run contrary to the RTKL's remedial purpose and the General Assembly's intent that the RTKL be used as a vehicle for increasing and ensuring government transparency. *See Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017).

Next, we find that Penn State has waived its argument that the requested materials are exempt from disclosure under Section 708(b) of the RTKL. That RTKL provision lists 30 discrete categories of information that are exempt from disclosure, while its companion provision places the burden upon the agency to establish by a preponderance of the evidence that a requested item should be deemed exempt under one or more of those specific exceptions. *See* 65 P.S. § 67.708(a)-(b). Despite this, Penn State does not identify which of those exemptions allegedly apply to the materials sought through Massey's request or even which items are allegedly exempt from disclosure. *See* Penn State's Br. at 27-29. We therefore conclude that Penn State has waived this argument, due to its failure to properly develop that argument in its brief. *Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) (quoting *Com. v. Johnson*, 985 A.2d 915, 924 (Pa. 2009)) (cleaned up) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails

10

to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him.").[13]

Finally, we address Penn State's assertion that the unredacted version of the Retreat Document is exempt from disclosure. This document consists of four parts: an agenda for the retreat; a slide deck entitled "Board of Trustees July Retreat Summary Long Range Priorities"; another slide deck entitled "The Student Success Imperative: Cost" that was presented during the retreat; and a fictional essay that was "written" by Niccolo Machiavelli in his role as "Former Assistant to Presidents, University of the Medici" and addressed to "Presidents, Senior Administrators, and Faculty Leaders Who Would Seek Change." *See* Retreat Doc. at 1-65. Penn State argues that the redacted portions of this document, which are only in the second slide deck, constitute predecisional deliberation information and confidential proprietary information and, thus, are exempt pursuant to Section 708(b)(10) and (11) of the RTKL.[14] Penn State's Br. at 29-39.[15]

---

[13] Penn State's broad exemption argument is also complicated by its assertion that the OOR erred by failing to perform an *in camera* review of the requested documents, as well as its request that we remand this matter to the OOR with instructions that it conduct such a review. Penn State's Br. at 27-29. This Court is the ultimate factfinder in appeals that, like this one, emanate from RTKL requests made to Commonwealth agencies. *See Bowling*, 75 A.3d at 474. Accordingly, we are required to conduct our own *in camera* review of requested materials where necessary and cannot rely upon the OOR's handling of such items. *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 668-71 (Pa. 2020). In the absence of waiver, Penn State's assertion that the OOR erred would therefore be moot, and its request for remand would be legally erroneous.

[14] 65 P.S. § 67.708(10)-(11).

[15] Penn State also asserts that we should remand this matter to the OOR, with instructions that the OOR conduct an *in camera* review of the Retreat Document to determine whether which portions should be deemed exempt under the confidential proprietary information exemption. *See* Penn State's Br. at 35-36. Again, such a request is not proper, as this Court is the ultimate factfinder in this instance. *See Bowling*, 75 A.3d at 474.

We disagree. Penn State offers two arguments in support of its assertion that the predecisional deliberation information exemption applies in this instance. In its main brief, Penn State does not challenge the OOR's determination that Penn State is not considered an agency under the RTKL; instead, it states that "[i]f this Court determines that the document is that of a Commonwealth agency subject to disclosure under the RTKL, then it must follow that the predecisional content in the document is predecisional deliberation information of [the DOA] because it is used by its Secretary, in his official capacity, as a member of the Penn State Board of Trustees." *See* Penn State's Br. at 36-39. Penn State then takes a different tack in its reply brief, where it also maintains that the OOR erred on this point because Penn State is an "agency" under Section 703 of the Sunshine Act,[16] which therefore *also* makes Penn State an agency for purposes of this specific exemption, pursuant to Section 708(b)(10)(A)(ii) of the RTKL. Penn State's Reply Br. at 28-29. However, Penn State failed to raise either of these arguments when this matter was before the OOR, in either its initial position statement or its subsequent supplemental information filing, and has accordingly waived them.[17] *See Allegheny Cnty. Dep't of Admin. Servs. v. Parsons*, 61 A.3d 336, 348 (Pa. Cmwlth. 2013) ("Any grounds for denial or defenses not raised at the asserting party's first opportunity are waived."); *E. Stroudsburg Univ. Found. v. Off. of Open Recs.*, 995 A.2d 496, 501 n.8 (Pa. Cmwlth. 2010) (a party waives any issue for purposes of appeal to our Court that it did not raise before the OOR).

---

[16] 65 Pa.C.S. § 703.

[17] We also note that Penn State used its reply brief to improperly expand upon the argument it presented in its main brief, in that Penn State did not present its Sunshine Act-based argument in its main brief. As our Supreme Court has explained, "a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief." *Com. v. Fahy*, 737 A.2d 214, 219 (Pa. 1999).

Penn State fares no better regarding the confidential proprietary information exemption. The RTKL defines "confidential proprietary information" as "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." *Id.*, § 67.102. "To qualify as "confidential proprietary information," the information must meet both components of the two-part test." *Dep't of Pub. Welfare v. Eiseman*, 85 A.3d 1117, 1128 (Pa. Cmwlth. 2014), *rev'd on other grounds*, 125 A.3d 19 (Pa. 2015). In order to determine whether the first prong is satisfied, the factfinder must "consider the efforts the parties undertook to maintain their secrecy." *Id.* The second prong can be satisfied only where it is shown via a preponderance of the evidence that there is "(1) actual competition in the relevant market; and[] (2) a likelihood [that the individual or entity that submitted the information will suffer] substantial competitive injury if the information were released." *Id.* Additionally, "competitive harm analysis 'is limited to harm flowing from the affirmative use of proprietary information by competitors. Competitive harm should not be taken to mean simply any injury to competitive position.'" *Dep't of Corr. v. Maulsby*, 121 A.3d 585, 590 (Pa. Cmwlth. 2015) (quoting *Eiseman*, 85 A.3d at 1128) (cleaned up).

This test is only partially satisfied in this instance. The record contains two relevant affidavits,[18] one from Susan L. West, the DOA's Open Records Office, and the other from Sara F. Thorndike, Penn State's Senior Vice President for Finance

---

[18] "Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Heavens v. Dep't of Env't Prot.*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013). Those "affidavits must be detailed, nonconclusory, and submitted in good faith." *Off. of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (quoting *Manchester v. Drug Enforcement Admin., U.S. Dep't of Justice*, 823 F. Supp. 1259, 1265 (E.D. Pa. 1993)). "In other words, a generic determination or conclusory statements are not sufficient to justify the exemption of public records." *Id.*

and Business, Treasurer, and Chief Financial Officer, as well as the Retreat Document itself. The Retreat Document is marked "CONFIDENTIAL" in bright red text at the top of its first page. Retreat Doc. at 1. Ms. West's affidavit mentions this notation and explains that it caused her to both contact Penn State's legal counsel and to provide counsel with "a copy of the confidential, third-party proprietary information for review." West Aff., ¶12. In addition, Ms. Thorndike attests in her affidavit that the Retreat Document was only made physically available to select individuals at Penn State on a "need to know" basis, as well as to others via Diligent (which Ms. Thorndike describes as "a secure communications portal with restrictive access permissions"). Thorndike Aff., ¶¶10-12. We therefore conclude that the first prong of the confidential proprietary information test has been met here.

However, we cannot come to the same conclusion regarding the test's second prong. There is nothing in "The Student Success Imperative: Cost" slide deck that facially shows how its disclosure would substantially harm Penn State's ability to compete in the higher education marketplace. As for Ms. Thorndike, she maintains in her affidavit that some of the redactions constitute "confidential and proprietary financial information relating to specific non-core [Penn State] assets being evaluated for strategic alternatives and possible reprioritization," while other parts of the redactions pertain to Penn State's unspecified "fiscal challenges." *Id.* In addition, Ms. Thorndike broadly asserts that disclosure of the redacted information would "create distrust and confusion as these are mere considerations, rather than items for decision"; "damage current operations of the assets"; "harm" or "damage employee morale and retention"; "reduce the market value of any non-core assets"; "disadvantage [Penn State] if it elected to re-prioritize the assets" or "to pursue any of the options under consideration[.]" *Id.* Such vague jargon and

14

conclusory statements fall woefully short of satisfying the second prong's requirements, in that they do not establish by a preponderance that Penn State is likely to suffer substantial competitive injury if Massey is provided with an unredacted version of the Retreat Document. We therefore conclude that the record evidence does not support Penn State's attempt to invoke the confidential proprietary information exemption regarding the Retreat Document.

### B. DOE

As for the DOE, its challenge to the OOR's September 1, 2023 Final Determination can be distilled into two arguments. First, the DOE asserts that it does not have actual or constructive possession, custody, or control of the requested documents, because those documents are located on Diligent and can only be accessed by the DOE's Secretary in read-only form. DOE's Br. at 10-15. Second, the DOE claims that it will have to create screenshots of the requested documents in order to comply with the OOR's Final Determination, because the DOE does not have the ability to secure and produce the original documents; this, according to the DOE, contradicts the OOR's ruling that the DOE has no obligation to create such screenshots, as well as the RTKL's language stating that Agencies do not need to create documents in response to a request. *Id.* at 17-19.

We have already largely disposed of the DOE's first argument, through our handling of Penn State's substantially similar contention. As we explained, *supra*, the Agencies have constructive possession of the requested materials, due to their Secretaries' Diligent access rights. We also note that the DOE has provided an affidavit from Kari Worley, who is identified therein "as the primary executive staff assistant to the [DOE] Secretary and Executive Deputy Secretary[.]" Worley Aff., ¶2. In that affidavit, Ms. Worley states that Secretary Mumin had not accessed

15

Diligent as of May 18, 2023, *i.e.*, the date of Massey's RTKL request. *Id.*, ¶12. This assertion is ultimately of no help to the DOE, as Secretary Mumin's failure to avail himself of his access rights does not negate the fact that he possessed those rights prior to when Massey filed his request.[19]

Finally, we are unpersuaded by the DOE's second argument. It is true that the DOE is not required to provide Massey with the screenshots he sought through his RTKL request.[20] We note, however, that Ms. Harvey has attested that Penn State's Office of the Board of Trustees "controls the Secretary's ability to print or download any document from the Diligent platform." Harvey Aff., ¶8. Thus, it appears that the DOE could directly obtain responsive documents through Diligent if those restrictions were lifted. The DOE does not address this point and fails to explain why it cannot simply ask Penn State to facilitate the fulfilment of Massey's request by expanding the Secretary's Diligent usage rights on at least a temporary basis.

---

[19] Penn State has provided an affidavit from Shannon S. Harvey, who is identified therein as the Office of the Board of Trustees' Assistant Vice President and Secretary. In that affidavit, Ms. Harvey states that the Office "controls the Secretary's ability to print or download any document from the Diligent platform." Harvey Aff., ¶8. In addition, Ms. Harvey avers that Secretary Mumin "became an *ex officio* member of the Board of Trustees in January of 2023 when he was appointed to serve as the [DOE's] Acting Secretary[,]" and "was granted Diligent access on May 3, 2023." *Id.*, ¶¶6-7. We find these averments to be credible.

[20] Massey did not appeal the OOR's Final Determinations, so neither the propriety of the OOR's denials of his screenshot requests, nor the soundness of the logic underpinning those denials, is before us in this matter.

## III. CONCLUSION

In accordance with the foregoing analysis, we affirm the OOR's September 1, 2023 and October 6, 2023 Final Determinations in their entirety.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Department of Education,<br>Petitioner | : | |
| | : | |
| | : | Nos. 1083 & 1092 C.D. 2023 |
| v. | : | |
| | : | |
| Wyatt Massey and Spotlight PA<br>(Office of Open Records),<br>Respondents | : | |
| | : | |
| | : | |
| | | |
| Pennsylvania State University,<br>Petitioner | : | |
| | : | |
| | : | No. 1207 C.D. 2023 |
| v. | : | |
| | : | |
| Pennsylvania Department of<br>Agriculture, Wyatt Massey, and<br>Spotlight PA<br>(Office of Open Records),<br>Respondents | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## **O R D E R**

AND NOW, this 20th day of October, 2025, it is hereby ORDERED that the Office of Open Records' September 1, 2023 and October 6, 2023 Final Determinations are AFFIRMED.

_____
**LORI A. DUMAS, Judge**