IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen M. Bradley,              :
               Petitioner       :
                             :   No.  304 M.D. 2020
               v.             :
                             :   Argued:  November 12, 2020
West Chester University Foundation,  :
               Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge (**P.**)

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED:  January 12, 2021

Before the Court are the preliminary objections filed by the West Chester University Foundation (Foundation) to the Petition for Review (Petition) of Colleen M. Bradley (Bradley). Bradley has asserted that the Foundation violated the Whistleblower Law[1] by failing to hire her, and advances claims of intentional and negligent infliction of emotional distress. The Foundation seeks dismissal of Bradley's action on the basis that the Foundation is not part of "the Commonwealth government" for purposes of our original jurisdiction, 42 Pa.C.S. §761(a)(1), and additionally contends that Bradley cannot state a claim against the Foundation because Bradley was never an employee of the Foundation. We sustain the Foundation's preliminary objections.

---

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-28.

The facts set forth in the Petition, which we accept as true for purposes of ruling upon preliminary objections,[2] are as follows. Bradley was hired by West Chester University (WCU)[3] in November 2011, and served as its Director of Budget and Financial Planning. (Petition ¶8.) On multiple occasions throughout her employment, Bradley expressed concerns to WCU and its employees regarding what she viewed to be false, deceptive, and manipulative budgets that WCU submitted to the Commonwealth. *Id.* ¶9. After complaining of these practices at a meeting in October 2014, Bradley's immediate supervisor, Mark Mixner, informed her that her employment would terminate on June 30, 2015, ostensibly because WCU needed "to seek a different kind of leadership." *Id.* ¶10. Mixner, however, previously had rated Bradley as a high performer in her three annual written performance evaluations. *Id.* ¶11.

With regard to the substance of her reports, Bradley avers that WCU presented "false break-even or near-break-even budgets" to the Commonwealth over three years, as a result of which WCU received in excess of $146 million in taxpayer-funded appropriations. *Id.* ¶14. WCU's scheme, Bradley asserts, was to understate actual operating surpluses by overstating expenditures for the line item "Transfer to Plant," which represented funds needed for anticipated plant or facility maintenance or improvement expenditures. *Id.* ¶¶16-17. Bradley claims that WCU deliberately manipulated this number to increase it to an amount that would reduce surpluses or

---

[2] "In ruling on preliminary objections, the courts must accept as true all well-pled allegations of material fact as well as all inferences reasonably deducible from the facts. . . . However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted." *Beishline v. Commonwealth*, 234 A.3d 878, 884 n.8 (Pa. Cmwlth. 2020).

[3] WCU is a member university of the Pennsylvania State System of Higher Education (PASSHE). *See* Section 2002–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 20–2002–A, added by the Act of November 12, 1982, P.L. 660.

reflect deficits, allowing WCU to maintain or increase its taxpayer-funded appropriations. *Id.* ¶18. Bradley opposed this practice throughout her employment with WCU, until she ultimately was terminated. *Id.* ¶20.

Bradley pursued claims in federal court against WCU and PASSHE to no avail. *Id.* ¶¶21-31, 35-41. She additionally sought relief in the Court of Common Pleas of Philadelphia County. On May 31, 2016, Bradley filed a three-count complaint against WCU and PASSHE, as well as several individual defendants, in which she raised claims identical to those advanced in the instant Petition, *i.e.*, a violation of the Whistleblower Law, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See Bradley v. West Chester University* (Pa. Cmwlth., No. 368 C.D. 2019, filed Jan. 10, 2020) (unreported). The trial court in that litigation ultimately entered a judgment of *non pros* against Bradley, but on appeal, Bradley argued that the trial court lacked subject matter jurisdiction over her claims in the first place. This Court agreed, concluding that "Bradley levied her whistleblower claim against two Commonwealth entities—PASSHE and [WCU]—thereby bestowing on this Court exclusive, original jurisdiction over her claim pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa.C.S. §761(a)(1)." *Id.*, slip op. at 7. Consequently, this Court additionally concluded that we could exercise ancillary jurisdiction over Bradley's tort claims under 42 Pa.C.S. §761(c). *Id.*, slip op. at 9. Accordingly, this Court vacated the trial court's order and docketed the matter as an action filed in our original jurisdiction.

On March 21, 2019, Bradley applied for the position of Vice President of Administration and Finance for WCU, which was actively seeking applicants for the position. (Petition ¶¶42, 44.) She was not offered the position. *Id.* ¶46. On November 6, 2019, Bradley commenced another action against WCU, averring that WCU refused

to hire her due to her previous reports of wrongdoing. *Id.* ¶47. On October 21, 2019, Bradley applied for the position of Chief Financial Officer (CFO) for the Foundation, which was actively seeking applicants for the position. *Id.* ¶¶48, 50. She was not offered the position. *Id.* ¶51. Bradley then commenced the instant litigation against the Foundation on May 13, 2020.

Bradley asserts that this Court has jurisdiction over her Petition because the Foundation is an "alter ego" of WCU, and WCU is a member university of PASSHE and, thus, a Commonwealth agency. *Id.* ¶¶3-4, 7. In Count I of the Petition, Bradley asserts that, by refusing to hire her, the Foundation retaliated against her in violation of the Whistleblower Law, due to her good faith reports of wrongdoing and waste at WCU. *Id.* ¶¶52-55.[4] She requests an award in excess of $1.5 million for past and future loss of income and employment opportunities, and an amount in excess of $5 million for physical and emotional distress, attorney's fees, and litigation costs. In Count II, of the Petition, Bradley asserts a claim of intentional infliction of emotional distress, contending that the Foundation's retaliatory conduct was intended to cause her severe emotional distress, or was undertaken with reckless disregard for or indifference to the probability of causing her such distress. *Id.* ¶¶56-59. Her request for damages is identical to that set forth in Count I. In Count III of the Petition, Bradley asserts a claim

---

[4] Section 3 of the Whistleblower Law provides, in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. §1423(a).

of negligent infliction of emotional distress, largely echoing the averments of Count II, but couching the Foundation's conduct in terms of negligence. *Id.* ¶¶60-64. Her request for damages is identical to those set forth in the previous counts.

In its preliminary objections, the Foundation primarily contests Bradley's assertion that it is the "alter ego" of WCU. (Preliminary Objections ¶¶10-21.) Because it does not view itself to be the alter ego of WCU, and because it otherwise does not constitute a Commonwealth agency, the Foundation asserts that Bradley cannot maintain an action against it in our original jurisdiction. The Foundation additionally advances a demurrer, asserting that, because Bradley was never employed by the Foundation, but rather by WCU, she is unable to state a claim against the Foundation under the Whistleblower Law. *Id.* ¶¶22-32. Additionally, because Bradley's claims of intentional and/or negligent infliction of emotional distress are ancillary to her claim under the Whistleblower Law, the Foundation asserts that the former claims must be dismissed alongside the latter. *Id.* ¶33.

In advancing their contrary positions, the parties primarily dispute the significance of this Court's decision in *West Chester University of Pennsylvania v. Schackner*, 124 A.3d 382 (Pa. Cmwlth. 2015). *Schackner*, a decision concerning the Right-To-Know Law (RTKL),[5] involved a request for records relating to WCU's retention of a lobbying firm, the Bravo Group, Inc. (Bravo), to support legislation that would allow it to separate from PASSHE. Relevantly, WCU, the Foundation, and Bravo had argued in part that, because it was the *Foundation* that had contracted with Bravo, and not WCU itself, the records therefore were not subject to disclosure as records of WCU. *Id.* at 386. The Office of Open Records (OOR) granted access to the written contract and records relating to Bravo's lobbying activities, citing this Court's

---

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

5

decision in *Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81 (Pa. Cmwlth. 2013),[6] and noting that WCU officials serve as *ex officio* Foundation officials as a result of their government positions, and that they had received the requested records by virtue of their positions. *Id.* at 387. This Court agreed. We stated:

> Foundations at the various institutions of [PASSHE] in large part are alter egos of the member universities to carry out activities that those universities want to undertake; otherwise, they would not exist. As a result, the OOR did not err in determining that the requested documents are 'public records' subject to disclosure under the RTKL. *See Bagwell*, 76 A.3d at 90 ("The non-agency status of the creator or sender of records does not preclude their public status. Private persons and entities may create correspondence and send it to an agency, thereby potentially making it a record of the agency . . . .") (citations omitted).

*Id.* at 395.

The OOR additionally had concluded that records relating to Bravo's lobbying activities were public records under section 506(d)(1) of the RTKL, which requires disclosure of a record not otherwise exempt when it is "in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function." 65 P.S. §67.506(d)(1). Because the Foundation's bylaws delegated to it the management of contracts for the advancement of WCU, and because the Bravo contract directly related

---

[6] In *Bagwell*, this Court held that a RTKL requester was entitled to access records in the possession of the Secretary of Education, which the Department of Education had received by virtue of the Secretary's *ex officio* role as a member of the Board of Trustees of Pennsylvania State University (PSU). The records were accessible to the public despite the fact that they were created by PSU, and even though PSU was not, itself, an agency under the RTKL. *Bagwell*, 76 A.3d at 92 ("Pursuant to a statutory requirement, the Secretary serves on behalf of the Department when serving on the PSU Board. Thus, the records the Secretary receives as a Board member are received by the Department pursuant to its statutory function as supporter and influencer of education at state-related institutions.").

6

to the performance of a governmental function, the OOR concluded that the records were public under section 506(d)(1). *Schackner*, 124 A.3d at 387, 395-96. This Court agreed with the OOR on this point as well. We found it abundantly clear that the Foundation's bylaws made "managing contracts for the advancement of WCU" to be a core function of the Foundation. *Id.* at 395. Moreover, this Court noted that the decision to engage Bravo for lobbying services was made upon the request of WCU's trustees, because WCU's president supported the idea of separating from PASSHE. *Id.* at 396. Accordingly, we concluded that the OOR did not err in concluding that the requested records directly related to a government function, and were therefore subject to disclosure under section 506(d)(1) of the RTKL.

The parties' arguments in the instant case are grounded in their differing readings of *Schackner*. Bradley emphasizes the language in *Schackner* stating that "[f]oundations at the various institutions of [PASSHE] in large part are alter egos of the member universities to carry out activities that those universities want to undertake." *Schackner*, 124 A.3d at 395. Bradley relies exclusively upon the "alter ego" language in order to assert that this Court has jurisdiction over her Petition. (Bradley's Br. at 5.)[7] The Foundation, by contrast, seeks to distinguish *Schackner* on the basis that our decision there hinged upon interpretation of the RTKL, and specifically relied upon WCU's delegation of a governmental function to the Foundation, *i.e.*, the management of contracts for the advancement of WCU. (Foundation's Br. at 7-8.) Although the Foundation concedes that its activities support and advance WCU, it maintains that it does not constitute an agency of the Commonwealth, and is instead a private non-profit corporation. *Id.* at 8. The

---

[7] Should we agree with the Foundation that our jurisdiction over this matter is lacking, Bradley requests that we transfer the matter to the Court of Common Pleas of Philadelphia County under 42 Pa.C.S. §5103(a). (Bradley's Br. at 5 n.1.)

7

Foundation further characterizes its decision not to hire Bradley as an "internal employment decision" not related to any governmental function of WCU, thus further distinguishing *Schackner*. *Id.*

The parties agree that Bradley's alter-ego theory is the linchpin of her claims. With regard to its demurrer, the Foundation asserts that it cannot be in violation of the Whistleblower Law because Bradley never was its employee. *Id.* at 9. Bradley acknowledges this, but relies again upon her alter-ego theory to undercut the significance of any distinction between WCU and the Foundation for purposes of the Whistleblower Law. (Bradley's Br. at 7, 8.) Accordingly, although the Foundation's jurisdictional challenge and its demurrer constitute separate preliminary objections, our analysis of Bradley's alter-ego theory is relevant to both lines of argument.

Our standard of review over preliminary objections is well-settled.

> In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. *Vattimo v. Lower Bucks Hospital, Inc.*, . . . 465 A.2d 1231, 1232 ([Pa]1983); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 914 A.2d 477, 479 n.2 (Pa. Cmwlth. 2007), *aff'd*, . . . 985 A.2d 678 ([Pa.] 2009). However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Portalatin v. Department of Corrections*, 979 A.2d 944, 947 (Pa. Cmwlth. 2009). "Preliminary objections should be sustained only in cases that are clear and free from doubt." *Pennsylvania AFL–CIO v. Commonwealth*, . . . 757 A.2d 917, 920 ([Pa.] 2000).

*Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 859 (Pa. Cmwlth. 2014).

The Foundation's challenge to this Court's subject matter jurisdiction may properly be raised by preliminary objection. Pa.R.C.P. No. 1028(a)(1). "When preliminary objections raise a question of subject matter jurisdiction, '[t]he trial court's

8

function is to determine whether the law will bar recovery due to a lack of subject matter jurisdiction.'" *Mazur v. Trinity Area School District*, 926 A.2d 1260, 1265 n.5 (Pa. Cmwlth. 2007) (quoting *O'Hare v. County of Northampton*, 782 A.2d 7, 11 n.6 (Pa. Cmwlth. 2001)). However, it is a class of objection for which our Rules of Civil Procedure contemplate the potential need for additional evidence, beyond the face of the pleadings. *See* Pa.R.C.P. No. 1028(c)(2) ("If an issue of fact is raised, the court shall consider evidence by depositions or otherwise."); *see also* Pa.R.C.P. No. 1028(c), *Note* ("Preliminary objections raising an issue under subdivision (a)(1) . . . cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice to plead or no response will be required under Rule 1029(d). However, preliminary objections raising an issue under subdivision (a)(2), (3) or (4) may be determined from facts of record so that further evidence is not required."); *Chester Upland School District v. Yesavage*, 653 A.2d 1319, 1325 (Pa. Cmwlth. 1994).

Here, the Foundation has endorsed its preliminary objections with a notice to plead. *See* Pa.R.C.P. No. 1028(c), *Note*. It additionally attached its Articles of Incorporation (Articles) to its preliminary objections. (Preliminary Objections, Exhibit A.) The Foundation offers the Articles in support of its contention that it is a private non-profit corporation and not a governmental entity, and that it "is governed separate[ly] from WCU, for the purpose of promoting the interests of WCU." (Preliminary Objections ¶3.) Bradley offered no contrary facts in response. Bradley, in fact, also has pleaded that the Foundation is "a non[-]profit corporation" that "advance[s] the mission and goals" of WCU. (Petition ¶2.) Accordingly, we discern no "issue of fact" that would require us to consider evidence on the question. Pa.R.C.P. No. 1028(c)(2). The parties do not presently rely upon factual considerations relating to the Foundation's operations, governance, finances, or its degree of independence

9

from WCU.[8]  Rather, they differ over the significance of *Schackner*.  Bradley asserts that the Foundation is the "alter ego" of WCU under prevailing precedent; the Foundation says that it is not.

Contrary to the Foundation's argument, this Court's rationale in *Schackner* did not depend exclusively upon WCU's delegation of specific governmental functions to the Foundation.  The portion of *Schackner* to which the Foundation refers endorsed the OOR's conclusion that records relating to Bravo's lobbying activities fell within the ambit of section 506(d)(1) of the RTKL, as records "in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function . . . ."  65 P.S. §67.506(d)(1).

The portion of *Schackner*'s analysis referring to the alter-ego doctrine was an alternative line of reasoning, in which we considered the OOR's conclusion that records received by WCU officials, by virtue of their status as *ex officio* members of the Foundation, were therefore WCU records, particularly given the nature of the relationship between the Foundation and WCU.  *Schackner*, 124 A.3d at 395.  It was in approving this rationale that this Court stated that entities such as the Foundation "in large part are alter egos of the member universities."  *Id.*  The rationale that this Court approved, however, did not depend upon the *Foundation's* possession of the requested records, but rather upon the *WCU officials' receipt* of those records—a circumstance that the OOR found analogous to this Court's decision in *Bagwell*.  *See id.* at 394-95;

---

[8] The determination of whether an entity is part of the Commonwealth government can depend upon a variety of fact-specific considerations. *See Cooper v. Pennsylvania State Athletic Conference*, 841 A.2d 638, 641 (Pa. Cmwlth. 2004) ("In determining whether an entity is part of the Commonwealth government, rather than a private entity performing public service, we may 'review . . . the operational and economic ties between the entity in question and the executive branch of the state government.'") (citing G. DARLINGTON, K. MCKEON, D. SCHUCKERS, K. BROWN, & P. CAWLEY, PENNSYLVANIA APPELLATE PRACTICE §40:307 (West 2019-2020 ed.)).

10

*see supra* n.6. Finding the analogy apt, we cited *Bagwell* for the proposition that "[t]he non-agency status of the creator or sender of records does not preclude their public status. Private persons and entities may create correspondence and send it to an agency, thereby potentially making it a record of the agency." *Id.* at 395 (quoting *Bagwell*, 76 A.3d at 90). The records were thus subject to disclosure. *Id.* *Schackner*'s reference to "alter egos" notwithstanding, *Schackner* did not hold that the Foundation, *ipso facto*, has been transformed into the "Commonwealth government" for all purposes, or specifically for purposes of this Court's original jurisdiction. 42 Pa.C.S. §761(a)(1).[9]

Another decision of this Court concerning the RTKL has involved exploration of the alter-ego theory, by way of concurrence. *See East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496 (Pa. Cmwlth. 2010) (*en banc*). *East Stroudsburg University Foundation* concerned a RTKL request for information relating to donors to the Science and Technology Center of East Stroudsburg University (ESU), and copies of minutes of the East Stroudsburg University Foundation's (ESU Foundation) Board of Directors' meetings between 2005 and 2007. This Court's decision turned upon section 506(d) of the RTKL, which, as discussed above, provides that a "public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency . . . shall be considered a public record of the agency for purposes of [the RTKL]." *Id.* at 499 (quoting 65 P.S.

---

[9] Indeed, even assuming that *Schackner* must be read to support the existence of an "alter-ego" relationship in the RTKL context, our Supreme Court has stated that "an entity's status as an agency or instrumentality varies, depending on the issue for which the determination is being made." *Pennsylvania State University v. Derry Township School District*, 731 A.2d 1272, 1274 (Pa. 1999); *cf. Quinn v. Southeastern Pennsylvania Transportation Authority*, 659 A.2d 613, 616 (Pa. Cmwlth. 1995) ("Whether an entity is the 'Commonwealth government' for the purposes of jurisdiction, or a 'Commonwealth agency' for the purposes of immunity from suit in tort, are totally distinct issues.").

§67.506(d)(1)). Although the ESU Foundation was a non-profit corporation and not an agency under the RTKL, the ESU Foundation had contracted with ESU—a PASSHE-member Commonwealth agency—to perform fundraising activities on its behalf. This Court concluded that such fundraising was a "governmental function" for purposes of section 506(d) of the RTKL, rendering the requested donor information subject to disclosure as "records directly related to performing fundraising activities on behalf of [ESU]." *Id.* at 505 (internal quotation marks omitted).

With regard to the ESU Foundation's meeting minutes, this Court acknowledged that the ESU Foundation "is not an agency by definition" under the RTKL, but instead "is a non-profit corporation, and its Board of Directors' meeting minutes are not subject to disclosure." *Id.* at 506. Nonetheless, because we concluded that fundraising was a governmental function that the ESU Foundation performed on behalf of ESU, we held that "any portion of the meeting minutes relating to the management of those funds [is] a public record." *Id.*

Notably, before the OOR, the requester in *East Stroudsburg University Foundation* initially had argued that the ESU Foundation was the "alter ego" of ESU, but it did not pursue the argument on appeal. In her concurring opinion joined by Judge Leavitt, then-President Judge Leadbetter concluded that the alter-ego "argument has substantial merit." *East Stroudsburg University Foundation*, 995 A.2d at 509 (Leadbetter, P.J., concurring). This was so, Judge Leadbetter opined, for a variety of reasons:

> [T]he [ESU] Foundation is staffed by [ESU] employees, and its Executive Director holds a dual position as Vice President for University Advancement. It operates out of offices in [ESU] buildings, and [ESU] provides clerical assistance, bookkeeping services, telephone and computer services. The [ESU] Foundation was established "to perform the functions of and carry out the purposes of the University," and to

12

"advance the charitable, educational and scientific purposes of [ESU]." It manages [ESU's] endowment and distributes scholarships [ESU] students. Finally, the Notes to the [ESU] Foundation's financial statements state that, "[t]he Foundation is a component unit of East Stroudsburg University, and its financial statements are included as such in the financial statements of the University."

*Id.* Judge Leadbetter expressed the view that "any time a non-profit corporation, or other form of private entity, is created and supported by a government agency and that entity's sole function is performing services for the benefit of the agency, and which the agency would otherwise perform, it is an instrumentality which should itself be treated as a public agency for purposes of disclosure requirements of the [RTKL]." *Id.*[10]

After review of the parties' arguments and the precedent upon which they rely, we are unable to conclude that the Foundation is an entity against which Bradley may proceed in our original jurisdiction. It bears repeating that the polestar of Bradley's position—*Schackner*—was a decision arising under the RTKL. Our decision there did not hold that WCU and the Foundation are one and the same for all purposes, for all claims, and with respect to all plaintiffs. Indeed, the relevant portion of *Schackner* depended upon WCU officials' actual receipt of the records at issue by virtue of their *ex officio* status as members of the Foundation. *Schackner* did not hold that any and all claims that could be brought against one entity necessarily may be brought against the other, in the same forum.

Nothing in *East Stroudsburg University Foundation*, or Judge Leadbetter's concurrence there, compels a different conclusion. Judge Leadbetter's

---

[10] The present author filed a separate concurring opinion in *East Stroudsburg University Foundation*, differing with Judge Leadbetter's analysis of the alter-ego doctrine primarily upon the basis that the issue was not before the Court on appeal. *East Stroudsburg University Foundation*, 995 A.2d at 510 (McCullough, J., concurring).

13

position in that case was premised upon specific operational and financial ties between ESU and the ESU Foundation. Bradley has not pleaded similar facts or offered analogous evidence in this matter, even though the Foundation's preliminary objections were endorsed with a notice to plead. *See* Pa.R.C.P. 1028(c), *Note*. Even if the view of the concurrence was to prevail, moreover, the alter-ego rationale was discussed expressly "for purposes of disclosure requirements of the" RTKL, *East Stroudsburg University Foundation*, 995 A.2d at 509 (Leadbetter, P.J., concurring), not in a context such as this, which has nothing to do with the disclosure of records. Regardless, the alter-ego theory in *East Stroudsburg University Foundation* did not represent the majority of the *en banc* panel in that case. The majority opinion there made quite clear that the ESU Foundation was "not an agency" under the RTKL, but was, instead, "a non-profit corporation." *East Stroudsburg University Foundation*, 995 A.2d at 506. Indeed, the majority's rationale was premised expressly upon the legal distinction between ESU and the ESU Foundation, as the latter was "a party with whom the agency ha[d] contracted" for purposes of section 506(d) of the RTKL, *i.e.*, not the agency itself.

Certainly, WCU "is part of [PASSHE] and is part of the Commonwealth government." *East Stroudsburg University Foundation*, 995 A.2d at 499. At bottom, however, the Foundation is not WCU. The Foundation "is not an agency," it "is a non-profit corporation." *Id.* at 506. This appeal does not concern a contract for the performance of governmental functions, as in *East Stroudsburg University Foundation*. It does not concern the receipt of records by WCU officials, as in *Schackner*. It does not involve the nuances of the RTKL. This appeal instead contemplates the wholesale elimination of any legal distinction between a PASSHE-member University and a non-profit corporation. Although the private status of an entity is not necessarily dispositive if there are sufficiently compelling reasons to deem

14

the entity to be part of the Commonwealth government, *see Cooper*, 841 A.2d at 640-41, here, we have merely a citation to a passing reference in *Schackner*, a decision which is otherwise inapposite.

We conclude that the "alter-ego" language in *Schackner* is simply too slender a reed to support the invocation of this Court's jurisdiction. To hold otherwise would require us to determine categorically that non-profit entities such as the Foundation are part of the Commonwealth government—a conclusion that would create a significant risk of unforeseen consequences. We do not read *Schackner* as demanding such a sweeping conclusion, and absent any other basis to so hold, such a conclusion is unwarranted here. We accordingly sustain the Foundation's preliminary objection under Pa.R.C.P. No. 1028(a)(1), based upon the absence of a claim against the "Commonwealth government." 42 Pa.C.S. §761(a)(1). To the extent that Bradley asserts that we possess ancillary jurisdiction under 42 Pa.C.S. §761(c) over her derivative tort claims set forth in Counts II and III of her Petition, Petition ¶7, we have no basis to exercise ancillary jurisdiction absent a related claim that is properly before this Court. *See Bowers v. T-Netix*, 837 A.2d 608, 614 (Pa. Cmwlth. 2003).

In the event that we find subject matter jurisdiction lacking, Bradley requests that we transfer this matter to the Court of Common Pleas of Philadelphia County pursuant to 42 Pa.C.S. §5103(a).[11] (Bradley's Br. at 5 n.1.) The Foundation,

---

[11] Section 5103(a) provides:

> If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or

**(Footnote continued on next page…)**

by contrast, asserts that the appropriate venue under Pa.R.C.P. No. 2179(a)[12] would be the Court of Common Pleas of Chester County, because the Foundation's principal place of business is located in Chester County. (Foundation's Br. at 6 n.1.)

"While our usual remedy would be to transfer to an appropriate court, we can refuse to transfer, in the interest of judicial economy, if we determine that there are no circumstances under which relief could be granted." *Richardson v. Pennsylvania Department of Corrections*, 991 A.2d 394, 397 (Pa. Cmwlth. 2010) (citing *Smock v. Commonwealth*, 436 A.2d 615, 617-18 (Pa. 1981)). We conclude that this is such a circumstance, and that transfer to a court of common pleas would be a futile endeavor

_____

other matter was first filed in a court or magisterial district of this Commonwealth. A matter which is within the exclusive jurisdiction of a court or magisterial district judge of this Commonwealth but which is commenced in any other tribunal of this Commonwealth shall be transferred by the other tribunal to the proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in the transferee court or magisterial district of this Commonwealth on the date when first filed in the other tribunal.

42 Pa.C.S. §5103(a).

[12]     Rule 2179 provides, in relevant part:

(a) Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in
       (1) the county where its registered office or principal place of business is located;
       (2) a county where it regularly conducts business;
       (3) the county where the cause of action arose;
       (4) a county where a transaction or occurrence took place out of which the cause of action arose[;] or
       (5) a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. No. 2179(a).

that would disserve the interest of judicial economy. As the Foundation asserts in its demurrer, Bradley is unable to state a claim against the Foundation under the Whistleblower Law because Bradley is not and never was an "employee" of the Foundation. (Preliminary Objections ¶¶31-32; Foundation's Br. at 8-10.) We agree.

As noted above, section 3(a) of the Whistleblower Law provides, in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate *against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment* because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. §1423(a) (emphasis added). An "employee," in turn, is defined as a "person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for an employer." Section 2 of the Whistleblower Law, 43 P.S. §1422.

By Bradley's own averments, she was never an "employee" of the Foundation. She has never "perform[ed] a service for wages . . . under a contract of hire" for the Foundation. *Id.* Indeed, the act that Bradley asserts as giving rise to a violation of the Whistleblower Law was the Foundation's decision *not* to hire her. Thus, by the plain language of the Whistleblower Law, because Bradley was never an "employee" of the Foundation, it is clear that Bradley will be unable to state a claim for relief against the Foundation under the Whistleblower Law. Moreover, because Bradley's tort claims are premised upon the asserted "retaliatory conduct" of the

17

Foundation, Petition ¶57, and are derivative of and ancillary to Bradley's claim under the Whistleblower Law, they will meet the same fate.

Because "there are no circumstances under which relief could be granted," *Richardson*, 991 A.2d at 397, in the interest of judicial economy, we decline to transfer this matter to a court of competent jurisdiction. Instead, we sustain the Foundation's preliminary objections and dismiss the Petition.

 

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen M. Bradley,     :
     Petitioner  :
          : No. 304 M.D. 2020
   v.       :
          :
West Chester University Foundation, :
     Respondent :

## ***ORDER***

AND NOW, this 12th day of January, 2021, the preliminary objections of West Chester University Foundation are SUSTAINED. The Petition for Review is DISMISSED.

_____
PATRICIA A. McCULLOUGH, Judge